# EXHIBIT B

# United States Sentencing Commission

## 2025-2026 Amendment Cycle

Public Comment on Proposed Priorities

90 FR 24710



July 15, 2024

United States Sentencing Commission
One Columbus Circle, N.E.
Suite 2-500, South Lobby
Washington, D.C. 20002-8002
Attention: Public Affairs – Priorities Comment

Dear Chairman Reeves and Members of the Commission:

This letter responds to the U.S. Sentencing Commission's request for public comments in conjunction with its recent Notice of Proposed Priorities. The undersigned applaud the Commission's efforts to consider how the U.S. Sentencing Guidelines could and should be redesigned to better serve the statutory goals set forth by Congress and our nation's commitments to liberty and justice. To that end, this letter focuses specifically on the need to revise the Guidelines applicable in fraud cases, particularly with respect to the undue emphasis placed on loss amount.

**The Widely-Recognized Issue with Guideline 2B1.1**

As the Commission knows, modern times have seen a dramatic increase in the severity of authorized and mandated sentencing terms for nonviolent offenders. Not long ago, any sentence of more than a few years of imprisonment for a nonviolent white-collar offender was rare. But sentencing guidelines that were perhaps originally designed to ensure that the most culpable and harmful of white-collar offenders face significant sentences now operate to increase excessively the prison terms recommended for less culpable fraud offenders. The U.S. Sentencing Guidelines can often call for decades in prison even for first-time offenders whose fraud offense may have been driven by dire personal or professional circumstances and who have shown great remorse for their wrongdoing and are eager to make amends for harms caused.

Extreme increases in recommended prison terms for white-collar offenders have largely been driven by the U.S. Sentencing Guidelines placing extraordinary emphasis on loss (and intended loss) calculations and giving too little consideration to those other factors that are most important to a fair and just sentence and that Congress emphasized in 18 U.S.C. §3553(a). As courts and commentators have pointed out, the Guidelines' heavy emphasis on loss calculations can problematically drive a sentencing court away from focusing on Congress's statutory instruction that a sentence be "sufficient, but not greater than necessary" to comply with the purposes of sentencing set out in 18 U.S.C. §3553(a)(2). In Guideline calculations, which still serve as the starting point and initial benchmark for federal sentencing decisions, the loss table too often dwarfs all other factors and can distort the assessment and impact of all other sentencing considerations.

There is no reason to believe Congress intended for loss determinations to overwhelm other considerations set forth in applicable sentencing statutes. Indeed, there is every reason to believe that the Guidelines' undue emphasis on loss can undermine Congress's interest in fair and balanced sentencing decision-making. The considerable tensions between the Guidelines' emphasis on loss

and Congress's statutory sentencing instructions in 18 U.S.C. §3553(a) are manifold because, even if soundly calculated: (1) loss is just one aspect of the "nature and circumstances of the offense" and does not capture other relevant offense factors; (2) loss frequently will not "reflect the seriousness of the offense" or produce "just punishment for the offense" but instead produces advisory Guideline ranges that are excessively high; (3) loss does not help a court decide how "to promote respect for the law" and may undermine respect for the law by suggesting sentences unconnected to true culpability; (4) loss poorly addresses the need "to afford adequate deterrence to criminal conduct" and may undermine deterrence by failing to focus on motivations for, and other considerations affecting, fraudulent conduct; and (5) loss may operate, perversely, to distort efforts "to impose similar punishment on similar offenders" because it can lead to similar Guideline-recommended ranges for different types of fraud offenses involving distinct defendants with disparate motives who produce different sorts of harms. And these myriad problems with the Guidelines' heavy reliance on loss are further compounded in those cases where calculations of loss end up having little or no relationship to either economic realities or an offender's actual personal gain from an offense.

Critically, many of the points stressed here have been stressed frequently by academics and practitioners in various ways for many years. One leading academic (a former prosecutor), for example, has opined that the "rules governing high-end federal white-collar sentences are now completely untethered from both criminal law theory and simple common sense." Frank Bowman, *Sacrificial Felon: Life Sentences For Marquee White-Collar Criminals Don't Make Sense*, AMERICAN LAWYER, Jan. 2007, at 63. Others agree. *See, e.g.*, Barry Boss & Kara Kapp, *How the Economic Loss Guideline Lost its Way, and How to Save It*, 18 OHIO STATE JOURNAL OF CRIMINAL LAW 605, 605-06 (2021) ("The economic crimes Guideline, Section 2B1.1 of the United States Sentencing Manual, routinely recommends arbitrary, disproportionate, and often draconian sentences to first-time offenders of economic crimes. These disproportionate sentences are driven primarily by Section 2B1.1's current loss table, which has an outsized role in determining the length of an economic crime offender's sentence."); Alan Ellis, John R. Steer & Mark Allenbaugh, *At a "Loss" for Justice: Federal Sentencing for Economic Offenses*, 25 CRIMINAL JUSTICE 34 (2011) (explaining why "loss" under the Sentencing Guidelines provides a very poor proxy for the true seriousness of an offense and the culpability of a defendant). Indeed, others — including a former federal prosecutor — have long acknowledged that "the current Federal Sentencing Guidelines for fraud and other white-collar offences are too severe" and appear much greater than "necessary to satisfy the traditional sentencing goals of specific and general deterrence — or even retribution." Andrew Weissmann & Joshua Block, *White-Collar Defendants and White-Collar Crimes*, 116 YALE L.J. POCKET PART 286 (2007), *at* http://yalelawjournal.org/forum/white-collar-defendants-and-white-collar-crimes. *See also generally* Barry Pollack & Addy Schmitt, *Restoring Sentencing Sanity in White-Collar Criminal Cases*, 29 WESTLAW J. WHITE-COLLAR CRIME 6 (Oct. 2014) (noting that "many judges have declined to employ the guidelines in economic crimes cases" because they too often recommend "sentences for first-time nonviolent white collar offenders … substantially higher than for the most heinous violent criminal offenses [which] undermines the fairness and integrity of our judicial system").

Examples of the excesses produced by the loss table abound; two examples of such cases are *United States v. Gozes-Wagner*, 14-cr-637 (S.D. Tex.) (involving the imposition of a 20-year (below-guideline) prison sentence in health care fraud case for mid-level first-time offender/single

mother of two children) and *United States v. Rubashkin*, 08-CR-1324 (N.D. Iowa) (involving a 27-year (within-guideline) sentence in bank fraud case for first-time offender with 10 children).

In the *Rubashkin* case, six former U.S. Attorneys General, two former U.S. Deputy Attorneys General, a former U.S. Solicitor General, and 14 former U.S. Attorneys submitted a letter to the sentencing judge stating their concerns about the severity of the fraud Guideline. They wrote that the "potential absurdity" of the Guidelines was "on full display," as the government's proposed Guideline calculation would have resulted in a recommended life sentence for Mr. Rubashkin – "a 51-year-old, first-time, non-violent offender whose case involved many mitigating factors and whose personal history and extraordinary family circumstances suggested that a sentence of a modest number of years could and would be more than sufficient to serve any and all applicable sentencing purposes." In the *Gozes-Wagner* case, more than 130 former officials, including six U.S. Attorneys General, an FBI director, two U.S. Solicitors General, two state Governors, a Member of Congress, several Deputy, Associate, and Assistant Attorneys General, scores of U.S. Attorneys, and more than three dozen Judges and Justices, submitted an *amicus curiae* brief to the Fifth Circuit Court of Appeals. In their brief, *amici* pointed to "the district court's excessive concern with the Guidelines range" and wrote that "given the effect of the calculated 'loss' on the Guideline range in this case and the lack of a rational relation to Ms. Gozes-Wagner's level of culpability, it was particularly problematic that the district court entirely failed to discharge its obligation to 'filter the Guidelines' general advice through § 3553(a)'s list of factors.' *Rita*, 551 U.S. at 357-58."

Notably, the injustice of such extreme prison terms in these two cases resulting from this problematic Guideline prompted the President of the United States to grant clemency in the form of prison commutations.

More generally, it is a telling and disconcerting reality that, in recent years, sentencing courts are granting downward variances in more than 42% of all fraud/theft cases. *See* U.S. Sentencing Commission, *Quick Facts – Theft, Property Destruction, & Fraud* (August 2023), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Theft_Property_Destruction_Fraud_FY22.pdf. These data document not only how often federal judges consider the fraud guideline unduly severe to comply with statutory sentencing instructions, but also that there is a heightened risk of unwarranted sentencing disparity in this arena where judges are so often compelled to sentence outside the terms of the Commission's guidance.

**A Thoughtful Proposal from the American Bar Association**

Though there have been many ideas for how to improve federal sentencing for fraud offenses, we see value in and support this Commission looking to work already completed a decade ago by the Task Force on the Reform of Federal Sentencing of Economic Crimes created by the Criminal Justice Section of the American Bar Association ("ABA Proposal"). That impressive Task Force, which consisted of five professors, three judges, six practitioners, two organizational representatives, and observers from the U.S. Department of Justice and the Federal Defenders, drafted a comprehensive and thoughtful proposed new federal sentencing guideline to effectuate needed reforms. The work of the Task Force, starting with the specifics of the ABA Proposal, is

available at: https://www.americanbar.org/content/dam/aba/publications/criminaljustice/economic_crimes.pdf

There are many facets of the ABA Proposal that we think merit careful study and adoption in some form, though signers of this letter might differ on any number of the detailed particulars. For this letter, we want to highlight a fundamental feature of the ABA Proposal that should be central to this Commission's work – namely, its emphasis on individual culpability. Though the ABA Proposal gives some attention to loss in the revised guideline, it centers the guideline calculation around "various culpability factors." In so doing, the ABA Proposal seeks to deemphasize a mathematical focus on loss in order to ensure judges focus mostly on determining an "appropriate culpability level" which "for any given case will depend on an array of factors." Notably, the ABA Proposal does not seek to define intricately and mechanistically all possible culpability factors, but rather soundly encourages and expects sentencing judges to carefully weigh the "almost limitless variety" of possible culpability considerations.

**Conclusion**

We are very encouraged by the Commission's recent efforts to modify the U.S. Sentencing Guidelines to better serve the statutory goals set forth by Congress and our nation's commitments to liberty and justice. The Guidelines' undue emphasis on loss in fraud cases has often resulted in excessively punitive sentence calculations that may bear little relation to traditional sentencing factors, thus undermining Congress's statutory sentencing instructions in 18 U.S.C. §3553(a) that judges impose sentences that are no greater than necessary to achieve the purposes of sentencing. We respectfully suggest that the Commission consider efforts, like the ABA Proposal, that seek to promote an emphasis on individual culpability to improve federal sentencing for fraud and theft offenses.

Thank you very much for your consideration of our views.

***

A. Brian Albritton
U.S. Attorney, Middle District of Florida (2008-2010)

Wayne Anderson
U.S. District Judge, Northern District of Illinois (1991-2010)

Robert Barr
U.S. Attorney, Northern District of Georgia (1986-1990)
U.S. House of Representatives (1995-2003)

Brian A. Benczkowski
Assistant Attorney General, Criminal Division (2018-2020)

Mark Bennett
U.S. District Judge, Northern District of Iowa (1994-2019)
U.S. Magistrate Judge, Northern District of Iowa (1991-1994)

Terree Bowers
U.S. Attorney, Central District of California (1992-1994)

James S. Brady
U.S. Attorney, Western District of Michigan (1977-1981)

Craig Carpenito
U.S. Attorney, District of New Jersey (2018-2021)

Zachary W. Carter
U.S. Attorney, Eastern District of New York (1993-1999)

Robert J. Cleary
U.S. Attorney, Southern District of Illinois (2002)
U.S. Attorney, District of New Jersey (1999-2002)

Kendall Coffey
U.S. Attorney, Southern District of Florida (1993-1996)

Robert Clark Corrente
U. S. Attorney, District of Rhode Island (2004-2009)

Kelly T. Currie
U.S. Attorney, Eastern District of New York (2015)

Andre M. Davis
U.S. Circuit Judge, Court of Appeals for the Fourth Circuit (2009-2017)
U.S. District Judge, District of Maryland (1995-2009)

Gregory K. Davis
U.S. Attorney, Southern District of Mississippi (2012-2017)

M. Rhett DeHart
U.S. Attorney, District of South Carolina (2021)

Bernice Donald
U.S. Circuit Judge, Court of Appeals for the Sixth Circuit (2011-2023)
U.S. District Judge, Western District of Tennessee (1995-2011)
U.S. Bankruptcy Judge, Western District of Tennessee (1988-1995)

Edward L. Dowd, Jr.
U.S. Attorney, Eastern District of Missouri (1993-1999)
Deputy Special Counsel, Waco Investigation (1999-2000)

William F. Downes
U.S. District Judge, District of Wyoming (1994-2011)

Seth D. DuCharme
U.S. Attorney, Eastern District of New York (2020-2021)

Troy A. Eid
U.S. Attorney, District of Colorado (2006-2009)

Royal Ferguson
U.S. District Judge, Western District of Texas (1994-2013)

Mark Filip
Deputy Attorney General of the United States (2008-2009)
U.S. District Judge, Northern District of Illinois (2004-2008)

Robert B. Fiske, Jr.
U.S. Attorney, Southern District of New York (1976-1980)

Jeremy Fogel
U.S. District Judge, Northern District of California (1998-2018)

Nancy Gertner
U.S. District Judge, District of Massachusetts (1994-2011)

James T. Giles
U.S. District Judge, Eastern District of Pennsylvania (1979-2008)

Benjamin C. Glassman
U.S. Attorney, Southern District of Ohio (2016-2019)

Jonathan L. Goldstein
U.S. Attorney, District of New Jersey (1974-1977)

Benjamin G. Greenberg
U.S. Attorney, Southern District of Florida (2017-2018)

Barry R. Grissom
U.S. Attorney, District of Kansas (2010-2016)

Richard J. Holwell
U.S. District Judge, Southern District of New York (2003-2012)

David Iglesias
U.S. Attorney, District of New Mexico (2001-2006)

John E. Jones III
U.S. District Judge, Middle District of Pennsylvania (2002-2021)

David N. Kelley
U.S. Attorney, Southern District of New York (2003-2005)

Walter D. Kelley, Jr.
U.S. District Judge, Eastern District of Virginia (2004-2008)

William C. Killion
U.S. Attorney, Eastern District of Tennessee (2010-2015)

Alex Kozinski
U.S. Circuit Judge, Court of Appeals for the Ninth Circuit (1985-2017)
U.S. Court of Federal Claims (1982-1985)

Stephen G. Larson
U.S. District Judge, Central District of California (2006-2009)
U.S. Magistrate Judge, Central District of California (2000-2006)

Ron B. Leighton
U.S. District Judge, Western District of Washington (2002-2020)

Bill Leone
U.S. Attorney, District of Colorado (2004-2006)

Mark J. Lesko
U.S. Attorney, Eastern District of New York (2021)

Timothy K. Lewis
U.S. Circuit Judge, Court of Appeals for the Third Circuit (1992-1999)
U.S. District Judge, Western District of Pennsylvania (1991-1992)

Beverly B. Martin
U.S. Circuit Judge, Court of Appeals for the Eleventh Circuit (2010-2021)
U.S. District Judge, Northern District of Georgia (2000-2010)

John S. Martin
U.S. District Judge, Southern District of New York (1990-2003)
U.S. Attorney, Southern District of New York (1980-1983)

Michael McConnell
U.S. Circuit Judge, Court of Appeals for the Tenth Circuit (2002-2009)

Michael B. Mukasey
Attorney General of the United States (2007-2009)
U.S. District Judge, Southern District of New York (1987-2006)

Paul B. Murphy
U.S. Attorney, Southern District of Georgia (2004)

William Nettles
U.S. Attorney, District of South Carolina (2010-2016)

David Ogden
Deputy Attorney General of the United States (2009-2010)
Assistant Attorney General, Civil Division (1999-2001)

Steven M. Orlofsky
U.S. District Judge, District of New Jersey (1996-2003)
U.S. Magistrate Judge, District of New Jersey (1976-1980)

Ryan Patrick
U.S. Attorney, Southern District of Texas (2018-2021)

Richard Pocker
U.S. Attorney, District of Nevada (1989-1990)

George Pratt
U.S. Circuit Judge, Court of Appeals for the Second Circuit (1982-1995)
U.S. District Judge, Eastern District of New York (1976-1982)

Philip Pro
U.S. District Judge, District of Nevada (1987-2015)
U.S. Magistrate Judge, District of Nevada (1980-1987)

Carole S. Rendon
U.S. Attorney, Northern District of Ohio (2016-2017)

Bridget Rohde
U.S. Attorney, Eastern District of New York (2017-2018)

Kevin V. Ryan
U.S. Attorney, Northern District of California (2002-2007)

Shira A. Scheindlin
U.S. District Judge, Southern District of New York (1994-2016)
U.S. Magistrate Judge, Eastern District of New York (1982-1986)

Abraham D. Sofaer
U.S. District Judge, Southern District of New York (1979-1985)

Carter M. Stewart
U.S. Attorney, Southern District of Ohio (2009-2016)

Larry D. Thompson
Deputy Attorney General of the United States (2001-2003)
U.S. Attorney, Northern District of Georgia (1982-1986)

John Daniel Tinder
U.S. Circuit Judge, Court of Appeals for the Seventh Circuit (2007-2015)
U.S. District Judge, Southern District of Indiana (1987-2007)
U.S. Attorney, Southern District of Indiana (1984-1987)

Brett Tolman
U.S. Attorney, District of Utah (2006-2009)

Stanley A. Twardy
U.S. Attorney, District of Connecticut (1985-1991)

Ursula Ungaro
U.S. District Judge, Southern District of Florida (1992-2021)

Peter Vaira
U.S. Attorney, Eastern District of Pennsylvania (1978-1983)

Thomas I. Vanaskie
U.S. Circuit Judge, Court of Appeals for the Third Circuit (2010-2019)
U.S. District Judge, Middle District of Pennsylvania (1994-2010)

Alan Vinegrad
U.S. Attorney, Eastern District of New York (2001-2002)

Atlee W. Wampler III
U.S. Attorney, Southern District of Florida (1980-1982)

T. John Ward
U.S. District Judge, Eastern District of Texas (1999-2011)

Donald Washington
Director, U.S. Marshals Service (2019-2021)
U.S. Attorney, Western District of Louisiana (2001-2010)

Francis M. Wikstrom
U.S. Attorney, District of Utah (1981-1982)

William D. Wilmoth
U.S. Attorney, Northern District of West Virginia (1993-1999)

Edward M. Yarbrough
U.S. Attorney, Middle District of Tennessee (2007-2010)